FILED'11 JAN 05 16:57USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SHAUNA M. JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CV 09-989-MO |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of Social ) | OPINION AND ORDER |
| Security, ) | |
| ) | |
| Defendant. ) | |

MOSMAN, J.,

    Plaintiff Shauna Jackson appeals the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. I have jurisdiction under 42 U.S.C. § 405(g). I REVERSE and REMAND the Commissioner's decision for further proceedings.

    Ms. Jackson alleged disability beginning January 12, 2004. Admin. R. 189, 289, 330. She satisfied the insured status requirements for Title II through September 30, 2007. *Id.* at 189, 256.

1 - OPINION AND ORDER

She must establish that she was disabled on or before that date to prevail on her Title II claim. 42 U.S.C. § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

Ms. Jackson claims disability due to a combination of impairments, including nerve damage under the collar bone, carpal tunnel syndrome, migraines, degenerative disk disease, a right shoulder problem, sleep disturbance, and depression related to financial difficulties. Admin. R. 278, 285, 322, 333, 335, 337-39. She alleges these medical conditions result in chronic constant pain, freezing of the right leg with frequent falls, inability to sleep, and inability to raise her right arm overhead. *Id.* at 310, 317, 319, 322, 327, 337.

The ALJ applied the five-step sequential disability determination process set forth in 20 C.F.R. §§ 404.1520 and 416.920. *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987). At step two of the decision-making process, the ALJ found Ms. Jackson had a combination of impairments resulting in significant work-related functional limitations, including degenerative disk disease, degenerative joint disease and osteopenia of the right ankle; drug addiction, and headaches. Admin. R. 191.

After accounting for the limitations imposed by her impairments, the ALJ found Ms. Jackson retained the residual functional capacity ("RFC") to perform sedentary work requiring her to lift up to ten pounds occasionally, handle objects only occasionally with the right hand, reach above shoulder level only occasionally with the right arm, and perform only simple tasks. *Id.* at 192. The vocational expert testified that the limitations in Ms. Jackson's RFC would not preclude the work-related activities required in sedentary occupations, such as a ticket checker. *Id.* at 197. The ALJ concluded that Ms. Jackson had failed to prove she was disabled within the meaning of the Social Security Act. *Id.*

The court reviews that decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Ms. Jackson contends the ALJ erred at step two of the decision-making process by failing to include an adjustment disorder among the severe impairments she specified. Ms. Jackson contends the ALJ's RFC assessment was flawed because she did not properly evaluate a medical source statement and two lay witness statements. Ms. Jackson also challenges the vocational testimony, asserting that the VE identified only jobs that are precluded by the limitations in her RFC assessment.

## I. Severe Impairments

Ms. Jackson contends the ALJ erred by failing to include her alleged adjustment disorder among the severe impairments she identified at step two. At step two, a claimant must meet what is called the severity requirement. The ALJ must determine whether the claimant has any combination of impairments which significantly limits her ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not meet this *de minimis* severity requirement, the ALJ must find her not disabled and need not continue beyond step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Here the ALJ resolved step two in Ms. Jackson's favor, finding her ability to work significantly limited by the combination of impairments identified previously. Admin. R. 191. The ALJ continued the decision-making process until reaching a determination at step five. Any error in designating specific impairments severe at step two was harmless at that juncture. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)(Any error in omitting an impairment from the severe

3 - OPINION AND ORDER

impairments identified at step two was harmless where step two was resolved in claimant's favor); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)(failure to list an impairment as severe at step two was harmless error where the ALJ considered the functional limitations posed by that impairment later in the decision).

Once a claimant has satisfied step two, the ALJ must take into consideration all evidence of functional limitations imposed by medically determinable impairments, including any that were not identified as severe at step two, in the remaining steps of the decision. 20 C.F.R. §§ 404.1523, 416.923. Accordingly, the ALJ was required to consider all the evidence of functional limitations from Ms. Jackson's adjustment disorder in the remaining steps of her decision. The ALJ said she would do that. Admin. R. 191. Ms. Jackson contends the ALJ did not do so, however. She contends the ALJ failed to adopt or properly reject findings of functional limitations made in a mental health assessment by Artice Geary, L.C.S.W., and a psychiatric evaluation by Nick Drakos, M.D.

In August 2005, Ms. Geary performed a mental health assessment of Ms. Jackson. Ms. Jackson complained of chronic pain, disturbed sleep, and depressed feelings. She had financial difficulties and recently had lost public assistance. She complained of physical pain and balance problems stemming from an incident in September 2001, in which she reportedly was beaten by police. She also reported chronic pain from degenerative disk disease. Ms. Jackson appeared depressed, irritable, sensitive to perceived criticism, and her anger escalated easily. Admin. R. 729-31. Ms. Geary believed Ms. Jackson met the diagnostic criteria for Adjustment Disorder with Depressed Mood and Opioid Abuse. *Id.* at 732. Ms. Geary referred Ms. Jackson to Dr. Drakos for a psychiatric evaluation to clarify her diagnosis. *Id.* at 733.

Dr. Drakos performed a psychiatric evaluation in September 2005. Ms. Jackson reported several months of escalating sadness, hopelessness, irritability, and other symptoms of depression. She alleged stressors including lack of financial support, deaths in her family, homelessness, chronic pain, the incarceration of her son, and recently having been raped by a relative while intoxicated. *Id.* at 718. Ms. Jackson admitted using street drugs, including heroin and methadone, to medicate her chronic pain because she did not have access to legitimate prescription medications. She admitted to a binge drinking pattern and a long history of daily marijuana use. *Id.* at 719.

Dr. Drakos observed that Ms. Jackson was alert, oriented, and appropriate in appearance. She reported depression, but exhibited a grandiose sense of self-importance. Her speech was logical, relevant, goal directed, and had normal rate and rhythm. Her behavior was generally appropriate with fairly good impulse control. Her thought processes were ordered, sequential, and pertinent. Her memory was intact for immediate, recent, and remote events. She appeared to be above average in intellectual function and exhibited good powers of concentration. Dr. Drakos diagnosed a several-month history of adjustment disorder linked to specific psychosocial stressors. He assigned a GAF score of 55, indicating Ms. Jackson was currently having moderate symptoms or functional difficulties. *Id.* at 720. *See Diagnostic and Statistical Manual of Mental Disorders* 30-32 (4th ed. 1994).

Ms. Jackson contends the ALJ erred by failing to give reasons for rejecting Dr. Drakos's opinion. She is correct that an ALJ has a duty to explain why she has chosen to reject an examining physician's opinion. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ did not reject or ignore Dr. Drakos's opinion, however. Admin. R. 195.

5 - OPINION AND ORDER

Dr. Drakos did not make any finding regarding specific functional limitations stemming from Ms. Jackson's adjustment disorder. He found the adjustment disorder had persisted for only a matter of months and made no prediction regarding ongoing impairment. His GAF score applied to Ms. Jackson's current level of function, and did not purport to describe her level of functioning at any other time, much less over the full period for which she claims disability. Dr. Drakos did not identify work-related activities Ms. Jackson was unable to do. In short, there is no basis for the court to find that the ALJ's RFC assessment is inconsistent with Dr. Drakos's opinion. The ALJ was not required to explain why she rejected Dr. Drakos's opinion because she neither expressly rejected the opinion nor reached conclusions which rejected it by implication. The same is true of the mental health assessment completed by Ms. Geary.

The court must uphold the ALJ's findings of fact if they are supported by inferences reasonably drawn from the record and if evidence exists to support more than one rational interpretation, the court must defer to the Commissioner's decision. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir 1995). The ALJ's conclusion that Ms. Jackson has no significant functional limitations resulting from an adjustment disorder is consistent with the evaluations of Dr. Drakos and social worker Geary and the record as a whole. The ALJ did not disregard or reject any pertinent evidence. She merely interpreted the available evidence in a manner that differed from the interpretation urged by Ms. Jackson. Under the applicable standard of review, the court must defer to the ALJ's findings of fact. *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40. Accordingly, I find no error in the ALJ's evaluation of Ms. Jackson's allegations of functional limitations resulting from an adjustment disorder.

## II.  Medical Source Statement

Ms. Jackson contends the ALJ failed to assess her RFC accurately because she improperly rejected the opinion of Tatsuro Ogisu, M.D. Dr. Ogisu performed a neurological examination of Ms. Jackson in May 2004. Ms. Jackson gave a disjointed history of nerve damage causing numbness in the thumb and index finger of the right hand causing her to lose her grip. Ms. Jackson also alleged a sciatic nerve injury which caused her right leg to give way resulting in frequent falls. Dr. Ogisu did not review Ms. Jackson's medical records, however, but relied on her subjective history and presentation of symptoms. Admin. R. 623.

In his physical examination, Dr. Ogisu found limitations in range of motion of the spine and right shoulder. Ms. Jackson resisted movements at the right shoulder due to subjective pain. Reaching was limited to shoulder level and her right grip was feeble. There were no signs of atrophy, sympathetic disturbance, or swelling of the right upper extremity, however, and in appearance, it was the same as the left. *Id.* at 626.

Ms. Jackson's pain behaviors were prominent and dramatic at times, but she could be distracted from her pain. Her movements were more guarded at the beginning of the examination than at the end. When putting on her socks, shoes, and sweater at the end of the examination, Ms. Jackson demonstrated reaching and range of motion capabilities that had been restricted by subjective pain during the examination. *Id.* at 625.

Dr. Ogisu could not determine whether a neurologic impairment was involved in Ms. Jackson's right side symptoms because her examination was limited by subjective pain and prominent functional behaviors. He opined that diagnostic imaging and electrodiagnostic testing with electromyography would be needed to clarify this. *Id.* at 627. In the absence of such imaging

7 - OPINION AND ORDER

and testing, Dr. Ogisu estimated that Ms. Jackson could sit for 6 hours of an 8-hour workday, stand and walk for 2 hours out of an 8-hour workday, and lift and carry 5 pounds on the right. Her lifting was limited to an occasional basis because she used her hands to operate a walker while ambulating. Reaching above shoulder level was limited on the right. He found Ms. Jackson had no restrictions on lifting, handling, or reaching on the left. *Id.* at 627. Dr. Ogisu noted that Ms. Jackson was ambidextrous. *Id.* at 623.

The ALJ considered Dr. Ogisu's findings and gave his opinion weight in her decision. *Id.* at 194, 195-96. She did not accept his opinion that Ms. Jackson could lift only 5 pounds with the right hand. *Id.* at 196. Instead, the ALJ adopted the findings of the consulting medical experts who reviewed Ms. Jackson's complete medical records and the case file and found the record as a whole supported an ability to lift 10 pounds occasionally on the right. *Id.* at 196, 628-34.

An ALJ must explain with clear and convincing reasons why she has chosen to reject an examining physician's opinion that is not contradicted by another physician. *Thomas*, 278 F.3d at 956-57; *Magallanes*, 881 F.2d at 751. If the opinion is contradicted by other physicians, the ALJ must explain with specific, legitimate reasons. *Thomas*, 278 F.3d at 957. The ALJ gave legally adequate reasons here.

The ALJ noted that Dr. Ogisu lacked confidence in his own opinion because it was not clarified by diagnostic imaging and electrodiagnostic testing with electromyography and he did not have access to Ms. Jackson's treatment records. He did not appear to believe Ms. Jackson's subjective presentation was a reliable basis for an accurate diagnosis. An ALJ can consider the extent to which a physician's opinion is supported by objective findings in determining the weight it should be given. *Meanal v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999). Dr. Ogisu observed

8 - OPINION AND ORDER

that Ms. Jackson limited his examination with prominent and dramatic pain and functional behaviors. When a claimant impedes the accurate testing of her limitations, an ALJ may reasonably draw an adverse inference as to the credibility of her disability claim. *Thomas*, 278 F.3d at 959.

The ALJ noted that the treatment records showed no other physician had found Ms. Jackson's lifting ability so severely limited. The ALJ noted that other physicians had observed embellishment by Ms. Jackson of her subjective symptoms and limitations. She noted that Ms. Jackson was not candid in describing her substance abuse to Dr. Ogisu. She also noted that Ms. Jackson reported activities of daily living that were inconsistent with a lifting restriction of 5 pounds. Admin. R. 196. Based on these factors and others described in her decision, the ALJ concluded that Ms. Jackson's subjective statements about the intensity, persistence, and limiting effects her impairments were not credible. *Id.* at 193. An ALJ can properly reject a physician's opinion that is premised on subjective complaints which the ALJ properly discounts. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Generally, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). This should not be blindly applied where circumstances show the non-examining physician has greater information and is better able to accurately assess the claimant's limitations. The ALJ's conclusion that the consulting medical experts were better able to accurately assess Ms. Jackson's lifting limitation flows logically from the present circumstances. The non-examining psychologists had access to the entire case record which showed her treatment record, instances of embellishment, and reports of her activities.

The Social Security Act places the burden of producing evidence and proving the functional limitations that make up the claimant's RFC on the claimant. 42 U.S.C. §§ 405(g), 423(d)(5); *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). Ms. Jackson has not produced reliable evidence that she is incapable of lifting 10 pounds occasionally with the right hand, as found by the consulting medical experts and the ALJ. The claimant's failure to satisfy her burden of proof is not an error attributable to the ALJ.

### III.  Lay Witness Statements

Ms. Jackson contends the ALJ improperly rejected the statements of two lay witnesses. First, she challenges the ALJ's treatment of written statements provided by her son, Sky Jackson. In October 2004, Mr. Jackson indicated his mother's health had declined since October 2001. Sometimes in the morning she was unable to lift her head and needed help walking to the bathroom to take a shower. She could not lift heavy objects and sometimes lost her grip and dropped even light objects. Admin. R. 356-57. Mr. Jackson provided another written statement in November 2006, indicating Ms. Jackson had problems with memory and could not get out of bed while having a migraine. *Id.* at 472-79.

Second, Ms. Jackson challenges the ALJ's evaluation of a written statement provided by her mother, Charlotte Mack, in October 2006. Ms. Mack described a series of unfortunate incidents in which Ms. Jackson lost friends, family members, financial support, and her home. Ms. Jackson appeared depressed because of these circumstances. Ms. Mack had seen Ms. Jackson forget directions and get lost and experience other memory problems. She had seen Ms. Jackson fall down and hurt herself several times. *Id.* at 463-71.

An ALJ must consider lay witness testimony concerning a claimant's ability to work. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1053 (9th Cir. 2006). Lay testimony as to the claimant's symptoms or how an impairment affects the ability to work cannot be disregarded without comment. *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount the testimony of a lay witness, he must give reasons that are germane to the witness. *Valentine v. Comm'r Soc. Sec.,* 574 F.3d 685, 694 (9th Cir. 2009); *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ considered the statements of Mr. Jackson and Ms. Mack, but found they were not entirely credible because they were contradicted by information in her treatment records. For example, the ALJ found no indication of an inability to lift her head during migraines in the progress notes of Ms. Jackson's physicians. This supports an adverse inference as to the credibility of Mr. Jackson's statement because a patient would be expected to report such a severe symptom to her physicians. The ALJ noted Dr. Drakos tested Ms. Jackson's memory in the mental status portion of his psychiatric examination and concluded her memory was intact for immediate, short term, and remote memory. Admin. R. 195, 720. This supports an adverse inference as to the credibility of the lay witnesses's allegations of memory deficits, because such deficits would be expected to reveal themselves during psychiatric evaluation. As noted previously, Dr. Ogisu indicated Ms. Jackson is ambidextrous and unlimited in handling with the left hand. He found her able to handle with the right on an occasional basis, but this limitation was premised on prominent and dramatic pain behavior and Dr. Ogisu thought further diagnostic testing was necessary for clarification. *Id.* at 625-27. Later, in August 2004, Dr. Strear found Ms. Jackson's upper extremity examination was normal, except she gave poor effort on grip strength testing. *Id.* at 660. These findings support the ALJ's

11 - OPINION AND ORDER

adverse credibility determination regarding Mr. Jackson's statements about Ms. Jackson's poor grip. The ALJ noted that, contrary to the lay witnesses' statements that Ms. Jackson had difficulty walking to the bathroom and experienced frequent falls, Ms. Jackson reported to treating sources that she could walk 17 blocks. *Id.* at 195, 819. The ALJ's conclusion that the treatment record contradicts the lay witness statements flows logically from the references she cited and supports her adverse credibility determination.

Ms. Jackson argues that the ALJ erred by addressing both lay witness statements at the same time, instead of discussing them separately and providing separate reasons, germane to each witness. Although she discussed them simultaneously, the ALJ's reasoning was germane to both witnesses. The requirement of germane reasoning precludes rejection based on broad rationales, such as the close relationship between a claimant and a friend or family member or the potential monetary interest of the witness in the outcome of the claim. *See Valentine*, 574 F.3d at 694; *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ's reasoning here permissibly linked the discounted statements with contradictory evidence in the record. Accordingly, I find no error in the ALJ's evaluation of the lay witness statements.

### IV. Vocational Evidence

At step five of the decision-making process, the Commissioner must show that jobs exist in significant numbers in the national economy that the claimant can perform. *Andrews*, 53 F.3d at 1043. The Commissioner can satisfy this burden by eliciting vocational expert testimony with a hypothetical question that sets forth all the limitations of the claimant. *Id.; Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). For information about the requirements of work, however, the Commissioner relies primarily on the Department of Labor publication *Dictionary of Occupational*

*Titles* (4th ed. 1991) ("DOT"). If testimony provided by the VE is inconsistent with the information in the DOT, the ALJ must resolve the conflict before relying on the testimony to find a claimant not disabled. Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

The VE testified that a person with Ms. Jackson's age, education, work experience, and RFC could perform jobs in the occupation of ticket checker. The VE said such a person takes tickets from patrons at a theater or auditorium. Admin. R. 1080-82. The parties agree that the VE actually described the occupation "ticket taker" instead of "ticket checker."

Ms. Jackson argues that the occupation of ticket taker requires work activities precluded by the limitations in her RFC assessment. She also contends the VE's testimony that the job of ticket taker can be performed by a person with her RFC is inconsistent with the information in the DOT. Specifically, Ms. Jackson contends the job of ticket taker requires light exertion exceeding her restriction to sedentary exertion, constant handling and reaching exceeding her limitation to occasional handling and reaching, and a reasoning level exceeding her limitation to simple tasks. She contends the decision must be remanded to clarify the vocational testimony.

I am unpersuaded that the ticket taker job requires handling and reaching in excess of the limitations in Ms. Jackson's RFC. The VE explained that the handling and reaching required was not bilateral, but could be performed with either hand. Admin. R. 1081-82. By using her unlimited left hand, Ms. Jackson could perform the activities required without doing more than occasional handling and reaching with the right. The VE's testimony adequately explained any deviation from the DOT. The record contained persuasive evidence and the ALJ's reasoning was clear. *See Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)(ALJ may rely on expert testimony which contradicts the DOT if the record contains persuasive evidence to support the deviation).

13 - OPINION AND ORDER

I am also unpersuaded that the DOT reasoning level exceeds Ms. Jackson's limitation to simple tasks. The reasoning levels given in the DOT refer to the claimant's level of general educational development and do not correspond to specific mental functions or work-related activities. The DOT describes the work activities required for an occupation separately from the reasoning level. For example, a ticket taker must be able to take tickets and verify their authenticity by checking the appearance and date. The reasoning level is not useful in determining whether a claimant can perform specific activities. Aside from that, the DOT indicates a reasoning level of 2 for the occupation of ticket taker, which is not a high level of reasoning. It requires employees to carry out detailed but uninvolved instructions and is not inconsistent with simple tasks. DOT, App.C, *available at* http://occupationalinfo.org/appendxc_1.html#III.

The VE testified that the ticket taker occupation required a sedentary level of exertion. Admin. R. 1081. The DOT indicates it is an occupation requiring light exertion. DOT, *available at* http//: www.occupationalinfo.org/34/344667010.html. The ALJ did not appear to be aware of the conflict and did not explain how she resolved it. Accordingly, the ALJ did not comply with the requirements of SSR 00-04p.

The error was not harmless. The ALJ assessed Ms. Jackson with the RFC to lift 10 pounds. Admin. R. 192. Work at the light level of exertion involves lifting up to 20 pounds at a time. 20 C.F.R. §§ 404.1567(b), 416.967(b). Accordingly, the erroneous vocational testimony does not support the ALJ's conclusion that Ms. Jackson can perform work as a ticket taker.

## V.   Remand

The ALJ's conclusion that there are jobs Ms. Jackson could perform is not supported by substantial evidence. Accordingly, the Commissioner has not satisfied his burden of proof at step

14 - OPINION AND ORDER

five of the decision-making process. *Andrews*, 53 F.3d at 1043. The Commissioner's decision must therefore be reversed. The present record does not establish that Ms. Jackson was disabled at any time during the relevant period. Enhancement of the record with vocational expert testimony is necessary before a disability determination can be made. Under these circumstances, a remand for further proceedings is appropriate. *Harman v. Apfel,* 211 F.3d 1172, 1178-80 (9th Cir. 2000).

On remand the Commissioner must perform step five of the decision-making process in compliance with SSR 00-4p and applicable regulations. It is not necessary for the Commissioner to adduce new evidence of Ms. Jackson's RFC or to revisit the first four steps of the decision-making process, unless he deems it reasonable and appropriate to do so.

Based on the foregoing, the Commissioner's final decision is REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this Opinion.

DATED this 5th day of January, 2011.

Michael W. Mosman
United States District Judge

15 - OPINION AND ORDER