IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**SHAUNA M. JACKSON**,

    Plaintiff,                                                    No. CV 09-989-MO

    v.                                                             OPINION AND ORDER

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**,

    Defendant.


**MOSMAN, J.**,

    Plaintiff Shauna Jackson moves for recovery of attorney fees of $7,306.81 pursuant to the Equal Access to Justice Act ("EAJA"). 28 U.S.C. § 2412(d). This Court has jurisdiction under 42 U.S.C. § 405(g). For the reasons stated below I ORDER that plaintiff be awarded attorney fees, reduced as discussed below.

PAGE 1 – OPINION AND ORDER

## FACTUAL BACKGROUND

For factual background, see my Opinion and Order [23] dated January 5, 2011.

## DISCUSSION

There are two issues present in determining an award of attorney fees under the EAJA. First, the court must determine whether the government's position is substantially justified. If it is, then the government prevails and no fees are awarded. If it is not, however, then the court must further determine whether the attorney fees sought are reasonable. If they are reasonable, then the EAJA stipulates that they shall be awarded to the prevailing plaintiff.

### I.     Substantially Justified

EAJA fees shall be awarded to the prevailing party unless the government can show that its position is substantially justified. 28 U.S.C. § 2412(d)(1)(A). A substantially justified position must have a "reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988). Although "the government's failure to prevail does not raise a presumption that its position was not substantially justified," *Kali v. Bowen*, 854 F.2d 329, 334 (9th Cir. 1988), it remains the government's burden to prove this element. *Id*. at 332. This inquiry consists of two parts: "first, whether the government was substantially justified in taking its original action; and, second, whether the government was substantially justified in defending the validity of the action in court." *Id*. at 332; *see also,* 28 U.S.C. § 2412(d)(2)(D). In this case, the government prevailed on claims concerning severe impairments, medical source documents, and lay witness statements. But, the plaintiff prevailed as to the claim of vocational evidence, and won the ultimate relief requested. The issue is whether the government's position — that the ALJ's decision that there

are jobs existing in significant numbers in the economy that plaintiff could perform was without error — was substantially justified.

"[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). But the ALJ is responsible for resolving conflicts and inconsistencies between testimony provided by the vocational expert ("VE") and information in the *Dictionary of Occupational Titles* (4th ed. 1991) ("DOT"). Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000). Until those conflicts are resolved, the ALJ cannot rely on the VE's testimony to find a claimant not disabled. *Id*.

Plaintiff argues in her opening brief [14] that the job described by the VE is incompatible with the exertion level of plaintiff's residual functional capacity ("RFC") as determined by the ALJ. Plaintiff's RFC restricts her to work of a sedentary exertion level, lifting no more than 10 pounds. At the hearing, the VE determined that plaintiff could perform the job of ticket checker, though both parties agree that the VE actually described the occupation of ticket taker. AR 1801.[1] The expert further testified that the occupation of ticket taker (although he may have said "checker") requires a sedentary level of exertion. *Id*. This is in conflict with the DOT, which indicates ticket taker as an occupation requiring light exertion. DOT, *available at* http://www.occupationalinfo.org/34/344667010.html (last visited May 27, 2011). At the hearing, the ALJ failed to resolve the conflict. In fact, the ALJ did not seem to even be aware of the conflict, as the Defendant's Brief [21] does not respond to the it at all. Further, in the

---

[1] Citations to "AR" refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on March 31, 2010.

PAGE 3 – OPINION AND ORDER

government's response to this motion [27], the government still does not attempt to explain or resolve the conflict. By failing to resolve the conflict between the VE and the DOT, the ALJ did not comply with SSR 00-4p. The ALJ's error may have been small, but it was not harmless, nor was it inconsequential to the determination of plaintiff's disability. The inconsistency doubled the amount of weight plaintiff might be required to lift—well over the 10 pounds assessed as part of plaintiff's RFC. AR 192. Thus, the ALJ's conclusion that there are jobs that exist in significant numbers in the economy that plaintiff could perform "is not supported by substantial evidence." Opinion and Order [23]. Where the government's position is not supported by substantial evidence, it is a "strong indication" that the position is not substantially justified, and it is a very unusual case where there will be a finding of substantial justification absent the presence of substantial evidence. *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005).

Therefore, as the government has thrice failed to resolve this pivotal conflict, I find that the government's position is not substantially justified, neither in its original action nor in its defense of that action in court.

## II.     Reasonableness

Plaintiff is seeking total attorney fees of $7,306.81, representing compensation for 39.45 hours of work, plus an additional 2.5 hours researching and writing a reply [28] to defendant's response [27]. The EAJA stipulates that awards for attorney fees shall not exceed $125 an hour, allowing adjustment for inflation. 28 U.S.C. § 2412(d)(2)(A). Specifically, plaintiff is seeking compensation at the 2009 rate of $172.24 and 2010 rate of $175.06 for work performed in 2010 and 2011, respectively.

The government argues that plaintiff's fee request is unreasonably large, objecting on several counts. The government claims that plaintiff should be barred from receiving compensation for work done on purely clerical matters. Further, the government calls to attention plaintiff's alleged practice of block billing and billing in large increments, asking that the court reduce the amount awarded because of these practices. Next, the government argues that the total number of hours spent by plaintiff is unreasonably high for this type of case. Finally, given that plaintiff prevailed on only one claim, the government argues that plaintiff should not be awarded attorney fees for hours expended on unsuccessful claims. The government asks that the court reduce the total hours requested by 80%, or roughly 27 hours, claiming that these 27 hours represent work that is "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

The government contends that plaintiff should not be compensated for hours spent on purely clerical matters. This is true. "[P]urely clerical or secretarial tasks should not be billed at a paralegal [or attorney] rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). The government fails, however, to point to work performed by plaintiff on this case that is, in fact, purely clerical. Defendant's Response [27] lists client intake; speaking with client; and drafting and reviewing complaints, motions, and memos, among other things, as clerical and secretarial tasks. I do not agree. These are tasks that are commonly performed by attorneys, and should be included when considering the total number of hours awarded for EAJA attorney fees. At the very least, these tasks fall into a legal gray area—work that can reasonably be performed by either an attorney or paralegal as the circumstances may allow. *Id.*

As to the issues of block billing and billing in large increments, the government is simply incorrect. While it is true that plaintiff bears the burden of providing "evidence supporting the

PAGE 5 – OPINION AND ORDER

hours worked and rates claimed," *Hensley*, 461 U.S. at 433, plaintiff is not required to give proof of "how each minute of his time was expended." *Id*. at 437 n.12.   I find that the timesheet attachment provided by plaintiff [25] adequately allows the court to identify hours reasonably expended on the various, specific tasks related to plaintiff's case.   Further, the government offers no evidence to support its claim that plaintiff bills in excessively large increments.   With the exception of one small discrepancy, the timesheet [25] shows that plaintiff consistently bills at "the more traditional tenth of an hour increments." *Edwards v. Nat'l. Bus. Factors*, 897 F. Supp. 458, 460 (D. Nev. 1995).   That one minor instance is not enough to justify a reduction in an award of attorney fees.

The government next argues that plaintiff's fee request exceeds the reasonable 20–30 hour range for a case of this nature, but fails to provide authority in support of this number.   "There is some consensus among the district courts that 20–40 hours is a reasonable amount of time to spend on a social security case that does not present particular difficulty." *Harden v. Comm'r of Soc. Sec. Admin.*, 497 F. Supp. 2d 1214, 1215 (D. Or. 2007).   Though 39.45 hours places plaintiff at the high end of this range, it still falls within the reasonable amount allowed for EAJA purposes.

Lastly, the government argues that, because plaintiff prevailed on only one issue, the court should reduce the hours claimed for briefing the case by 80% to account for hours expended on issues that the plaintiff ultimately lost.   The government points to *Hensley* in arguing that "hours spent on the unsuccessful claim[s] should be excluded in considering the amount of a reasonable fee." *Hensley*, 461 U.S. at 440.   The analysis is not as simple, however, as merely excluding fees for unsuccessful claims.   *Hensley* provides a two-pronged test to evaluate the "important factor of the 'results obtained.'" *Id*. at 434.   First, the court must determine whether "plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which [she] succeeded." *Id*.   If the claims

PAGE 6 – OPINION AND ORDER

are truly "distinct in all respects," then hours expended on those unsuccessful, unrelated claims should be excluded. *Id*. at 440. Where the unsuccessful claims are related to those on which plaintiff prevailed, however, the court must then ask if "plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id*. at 434. If plaintiff achieved "excellent results," attorney fees should be awarded in full. *Id*. at 435. Where plaintiff obtained "only partial or limited success," a full award of attorney fees may be considered excessive. *Id*. at 436.

Determining the relatedness of successful and unsuccessful claims is not a precise art. "[T]here is no certain method of determining when claims are 'related' or 'unrelated.'" *Id*. at 437. "Claims are 'unrelated' if they are 'entirely distinct and separate' from the claims on which the plaintiff prevailed." *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001), *quoting Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995). This may be the case "even where the claims are brought against the same defendants," such as a government agency or its officers. *Hensley*, 461 U.S. at 434–35. Conversely, related claims will involve "a common core of facts or will be based on related legal theories." *Id*. at 435. In determining relatedness, some courts have considered whether "the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised." *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1279 (7th Cir. 1983); *see also Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986). Other courts have analyzed whether "the unsuccessful claims were presented separately, whether testimony . . . overlapped, and whether the evidence concerning one issue was material and relevant to the other issues." *Thorne*, 802 F.2d at 1141; s*ee also Vaughns v. Bd. of Educ. of*

*Prince George's County*, 598 F. Supp. 1262, 1272-74 (D. Md. 1984), *aff'd*, 770 F.2d 1244 (4th Cir. 1985); *Cinevision Corp. v. City of* Burbank, 745 F.2d 560, 581 (9th Cir. 1984).

Plaintiff prevailed only on the claim that the ALJ erred in adopting the testimony of the VE, specifically that she could perform the job of a ticket taker. Plaintiff ultimately failed on the claims of severe impairments, medical source statements, and lay witness statements. I find that plaintiff's unsuccessful claims concerning medical source statements and lay witness statements are related to plaintiff's prevailing claim, and are thus entitled to consideration in determining an award of reasonable attorney fees. Plaintiff's unsuccessful claim of severe impairments, however, is not related to the prevailing claim, and "the final fee award may not include time expended" on this claim. *Thorne*, 802 F.2d at 1141.

Claims are related if they have a "common core of facts" or are "based on related legal theories." *Hensley*, 461 U.S. at 435. The facts of plaintiff's prevailing claim revolve around her limited physical and mental abilities. Plaintiff's RFC confines her to a sedentary level of exertion; occasional handling with the right hand and occasional reaching with the right shoulder; and a reasoning level limited to simple tasks. AR 192–97. These same limitations in plaintiff's abilities are at issue in both the medical source statement claim and the law witness statement claim. The statements of Dr. Tatsuro Ogisu, plaintiff's examining doctor, concern plaintiff's limited use of the right hand and shoulder. AR 627. Dr. Ogisu further testifies concerning plaintiff's limitations in lifting even light objects. *Id*. The lay statements made by Sky Jackson, plaintiff's son, and Charlotte Mack, plaintiff's mother, also describe plaintiff's limited ability to lift and handle objects with the right hand and arm. AR 356, 469. They further discuss the adverse effect of plaintiff's limited mental abilities on her work. *Id*. at 469. Thus, plaintiff's unsuccessful claims concerning medical and lay statements involve the same core facts and legal

PAGE 8 – OPINION AND ORDER

theories as her successful vocational evidence claim. These claims were presented together, and evidence at issue in one claim was certainly material and relevant to the others. There is no threshold amount of relatedness that must be met under the *Hensley* test, but it is clear that these claims are not "entirely distinct and separate." *Odima*, 53 F.3d at 1499.

Plaintiff's unsuccessful claim that the ALJ improperly found her adjustment disorder to be non-severe is not related to the successful claim concerning the VE testimony. This unsuccessful claim centers on the evaluation of Dr. Nick Drakos. In September 2005, Dr. Drakos performed a psychiatric evaluation on plaintiff. In his report, Dr. Drakos stated that plaintiff presented symptoms of depression, mood instability, episodes of anger and rage, among other personality disorders. AR 720. Combined, these symptoms led Dr. Drakos to diagnose plaintiff with adjustment disorder, which plaintiff alleges severely limits her ability to work. *Id*. Considering Dr. Drakos's evaluation, the ALJ subsequently found that plaintiff's disorder did not result in significant functional limitations. Whether or not the ALJ erred in this finding is immaterial for current purposes. This claim does not share the same core facts and is not based on the same legal theories as the prevailing claim. Testimony on these claims does not overlap, and evidence pertaining to one claim is not material or relevant to the other. Thus, I find that this unsuccessful claim is not related to plaintiff's prevailing claim, and the fee award may not include time expended on this claim. *Hensley*, 461 U.S. at 435. In ascertaining an appropriate amount by which to reduce attorney fees "[t]here is no precise rule or formula" for the court to follow. *Id*. at 436. The court may choose to identify specific hours expended on the excluded claim and eliminate those from the total, or "it may simply reduce the award." *Id*. That discretion is left to the court to make an "equitable judgment." *Id*. at 437.

Having found that two of the unsuccessful claims are in fact related to plaintiff's prevailing claim, the court must next determine whether plaintiff "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id*. at 434. The court should "focus on the significance of the overall relief obtained." *Id*. at 435. A fully compensatory award should be granted when the plaintiff obtains "excellent results," but the court may reduce the fee award where the success achieved is only partial or limited. *Id*. at 435–36. However, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised." *Id*. A finding of an excellent result may still be appropriate in a case, such as this, where the plaintiff prevailed on only one claim and failed on others. In *Davis v. County of Los Angeles*, cited in *Hensley*, the court found it legally irrelevant that counsel "expended a certain limited amount of time pursuing certain issues of fact and law that ultimately did not become litigated issues in the case." *Id*. at 435; *see also Davis v. County of Los Angeles*, 1974 WL 180, at *3 (C. D. Cal. June 5, 1974). The dispositive factor is the "time reasonably expended in pursuit of the ultimate result achieved." *Davis*, 1974 WL 180, at *3.

The Ninth Circuit has reasoned that where the plaintiff has accomplished the mission that he or she set out to accomplish, it is "the functional equivalent of a finding that [the plaintiff] achieved an 'excellent result.'" *Sorenson*, 239 F.3d at 1147. Plaintiff's mission in bringing this case before this court was to seek reversal and remand of the ALJ's decision. Plaintiff's Opening Brief [14]. Notwithstanding that plaintiff prevailed on only one claim, the ultimate result achieved was an accomplishment of that mission, and thus plaintiff obtained an excellent result. As such, I find that plaintiff should receive a full compensatory award for all hours expended on the successful claim on the VE testimony, as well as on the two unsuccessful though related claims on medical opinion and lay witness statements.

PAGE 10 – OPINION AND ORDER

## CONCLUSION

I find that the government's position was not, and still is not substantially justified. Further, I find that plaintiff's request of compensation for 39.45 hours of work performed should be reduced by 25% to account for the unsuccessful, unrelated claim.  As such, plaintiff's original request for $6,869.16 is reduced to $5,151.87, plus $437.65 for 2.5 hours expended in reply to the government's response.  Therefore, I ORDER that plaintiff be awarded attorney fees in the amount of $5,589.52 under the Equal Access to Justice Act.

IT IS SO ORDERED.

DATED this   28th   day of June, 2011.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

PAGE 11 – OPINION AND ORDER